2022 IL App (1st) 210355

No. 1-21-0355

Opinion filed November 28, 2022

First Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 11 CR 00197 |
| TIMOTHY HERRING, | ) ) ) | The Honorable Mary Margaret Brosnahan, |
| Defendant-Appellant. | ) ) | Judge, Presiding. |

JUSTICE HYMAN delivered the judgment of the court, with opinion.
Justice Pucinski concurred in the judgment and opinion.
Presiding Justice Lavin dissented, with opinion.

**OPINION**

¶ 1　This case should be straightforward. The trial court sentenced Timothy Herring to two concurrent terms of mandatory life imprisonment, with a concurrent term of 14 years imprisonment for robbery. Herring argued on direct appeal that his life sentences were unconstitutional because the mandatory nature of the sentences prevented the trial court from considering his age (19 years old) at the time of the offense. *People v. Herring*, 2018 IL App (1st) 152067, ¶ 103. We found ourselves "unable to consider" his claim under the proportionate penalties clause of the Illinois Constitution (Ill. Const. 1970, art. I § 11) because the record was

insufficiently developed to determine whether constitutional protections regularly applied to juvenile defendants at sentencing should also apply to Herring as a young adult. *Id.* ¶ 104. We cited our supreme court's decision in *People v. Harris*, 2018 IL 121932, ¶¶ 45, 48, which directed young adult defendants raising as-applied constitutional challenges to their sentences under the proportionate penalties clause to "sufficiently develop[ ]" the record in post-conviction proceedings. *Herring*, 2018 IL App (1st) 152067, ¶ 104.

¶ 2    Herring took our suggestion and filed a petition for postconviction relief. He argued that his mandatory life sentence violates the proportionate penalties clause because he was functionally a juvenile at the time of the offense. He alleged he "suffer[ed] from impulse control disorders *** as a direct result of his under-developed mind, immaturity, diminished [mental] state[, and] capacity." In addition, he could not "appreciate the risks, consequences, *** [and] the circumstances associated with these serious charges." He then linked these facts to studies explaining the development of the young adult mind through age 25. The trial court summarily dismissed the petition as frivolous and without merit, having failed to satisfy the extremely low threshold of alleging the gist of a constitutional claim.

¶ 3    The relative simplicity of the facts is confounded, however. The law is in disarray on the question of the level of corroboration a young adult petitioner needs to make for arguably showing that the principles of *Miller v. Alabama*, 567 U.S. 460 (2012), should apply to them. For example, in *People v. Zumot*, 2021 IL App (1st) 191743, ¶ 31, the defendant alleged facts relating to his actions in prison showing rehabilitation. The court found those allegations sufficient, even though the defendant did not attach anything to his petition related to his mental development at the time of the offense because they "can be corroborated, are objective in nature, and bear directly on the Supreme Court's observation[s] in *Miller*." *Id.*; see also *People v. Ruiz*, 2020 IL App (1st)

163145, ¶ 56 (finding sufficient allegation that young adult defendant was " 'largely unsettled in [his] characters and habits and this must be taken into consideration' " when linked with citations to articles and studies about young adult brain development). While we know that "bare assertions that [a defendant's] age and background were not considered by the trial court" are insufficient (*People v. Howard*, 2021 IL App (2d) 190695, ¶ 46), some courts have gone well beyond that threshold and wanted documents supporting the defendant's factual claims about their youth and attendant circumstances. See *People v. Carrion*, 2020 IL App (1st) 171001, ¶ 36 (discussing *People v. Minniefield*, 2020 IL App (1st) 170541, where petitioner provided documentation).

¶ 4 Recently, the Illinois Supreme Court has decided to wade into this area again. We are aware of three cases involving young adult defendants pending before the court. But all of them raise procedural or factual issues distinct from Herring's case or arise in procedural postures that make addressing the core constitutional question more difficult. One case involves an 18-year-old defendant's unique challenge to the constitutionality of a mandatory firearm enhancement that did not result in a life sentence or a *de facto* life sentence. See *People v. Hilliard*, 2021 IL App (1st) 200112, *appeal allowed*, No. 128186 (Ill. May 25, 2022). The second involves the more burdensome cause-and-prejudice test for successive postconviction petitions. See *People v. Moore*, 2020 IL App (4th) 190528, *appeal allowed*, No. 126461 (Ill. Nov. 24, 2021). The third also involves the complicating factor arising from a successive postconviction petition, complicated by the young adult defendant's additional intellectual disability (fetal alcohol syndrome). See *People v. Clark*, 2021 IL App (3d) 180610, *appeal allowed*, No. 127273 (Ill. Sept. 29, 2021). Resolving these cases will be helpful because a defendant who meets the pleading standards for a successive postconviction petition necessarily satisfies the lower pleading bar for an initial petition. None of these decisions, however, will set the pleading baseline for a young

adult defendant raising a proportionate penalties clause claim in their initial postconviction petition.

¶ 5 Regardless of the disparate opinions that support reversal and those that support affirmance, we look to the two questions we ask at the first stage of postconviction review: (i) did Herring raise "an *indisputably* meritless legal theory," meaning one that is "completely contradicted by the record," and (ii) did Herring base his theory on "fanciful factual allegations," meaning allegations that are "fantastic or delusional"? (Emphasis added.) *People v. Hodges*, 234 Ill. 2d 1, 16-17 (2009). While appellate court decisions disagree on what constitutes a legally meritless first stage petition for this type of claim and on the amount of detail that renders factual allegations "fanciful," we find it impossible to say Herring has not made at least an *arguable* claim.

¶ 6 Until our supreme court intervenes to settle the pleading standard for claims like Herring's, the just course is to allow Herring's claim to proceed and be tested at the later stages of the postconviction process. There, he will have to prove the allegations he makes to earn relief. We, therefore, reverse and remand for further proceedings.

¶ 7                                     Background

¶ 8 We recounted the facts in detail in our opinion disposing of Herring's direct appeal. *Herring*, 2018 IL App (1st) 152067, ¶¶ 1-53. On November 26, 2010, Stephen Peters discovered that someone had broken into his prized Ford Mustang stored in his mother's garage. He called the police and waited outside for them to arrive. Chicago Police Officer Michael Flisk responded. Herring returned to the scene and shot both Peters and Flisk once in the head. Peters's mother heard the gunshots and called the police. While she was on the phone with 911, Herring returned and again shot Peters and Flisk once in the head. Peter's mother saw Herring pushing her two garbage carts away from her garage. Police officers recovered the garbage carts in a backyard

down the alley from her home. Inside were speakers and other electronics taken from the Mustang. A jury convicted Herring of two counts of first degree murder and one count of robbery.

¶ 9    In preparation for sentencing, the trial court ordered a presentence investigation report. It stated that Herring was 19 and 11 months old at the time of the murders. Also, Herring had no adjudications of juvenile delinquency but was convicted of armed robbery in March 2008 and sentenced to six years in prison. The remaining details of the report are sparse because Herring refused to be interviewed.

¶ 10    At the sentencing hearing, the State called several witnesses in aggravation. An investigator with the Cook County State's Attorney's office testified that he interviewed one of Herring's high school teachers. When Herring was 15, the teacher asked him to remove his hat in class, and he struck her across the face, breaking her glasses. In addition, a Chicago Police Department sergeant testified about an armed robbery Herring committed in 2007 at age 16. Herring approached liquor store employees at around 2:00 a.m. while wearing a mask and carrying a shotgun. He pointed a shotgun at one of the employees and demanded money. The employee screamed and dropped the money, after which Herring shot his gun into the air and left with about $7,000.

¶ 11    A Chicago Police Department detective testified regarding a 2010 incident where Herring attempted to run over two people before shooting one of them. Herring swerved back and forth and circled, trying to run down the victims. Then he fired a handgun at least seven times, striking one of the men in the back. This incident occurred while Herring was on parole for the 2007 armed robbery. As a result, Herring was indicted for attempted murder and aggravated battery. But the victim died in 2013, and the charges were dismissed. The State further presented evidence from a forensic scientist, who testified that the bullet cartridge cases indicated that the gun used in the 2010 shooting was recovered in the Flisk/Peters murders.

¶ 12    Next, the State presented evidence regarding a federal program called Project Safe Neighborhoods (PSN), a violent crime prevention program that involves collaboration among federal, state, and local law enforcement and academia. One component of the program is a PSN forum in which law enforcement meets with parolees recently released from prison and explains what happens if they violate parole, including enhanced penalties under a habitual criminal statute. The forum lets local service providers help the parolees with job training, education, counseling, and identification. Herring attended a PSN forum eight days before the murders.

¶ 13    Finally, the State presented victim impact statements from Flisk's children, Flisk's widow, and Peters' widow. The victims' families expressed how the deaths had affected them and how they had suffered emotionally and mentally.

¶ 14    In mitigation, defense counsel called Herring's younger brother, who spoke about how Herring had him strive for the best and not go around with the wrong crowd. Herring's brother also testified that many family members were in the courtroom and attended the trial. Herring's counsel also presented a letter from Herring's neighbor, describing him as "kind, considerate, caring and respectful" and "an intelligent, capable and personable young man." Another neighbor stated that Herring "had a lot of manners for [her]" and "loves his family."

¶ 15    In argument, the State described Herring as a "career criminal," a "convicted murderer *** who has lived a life of crime." The State recounted Herring's slapping of his high school teacher, the armed robbery of the liquor store, and the fact that Herring was on parole when he attempted to run over two people and shot one of them in the back. The State noted that the court was statutorily obligated to impose a life sentence and Herring had been "building towards this" sentence.

¶ 16    Defense counsel pointed out that he was a child when he committed past offenses and was not offered services or counseling but treated as an adult. She stated that "16-year-olds still can be reached and rehabilitated, but there was no rehabilitation for Timothy Herring." Defense counsel highlighted the "pointless[ness]" of the sentencing proceeding because "there's only one sentence that the law allows [the court] to give, it's a natural life sentence ***. [The court is] not allowed to consider [Herring's] age. [The court is] not allowed to consider his background. [The court is] not allowed to consider his family. . ." Further, "[p]eople aren't all good and they are not all bad," but "the sentence was a foregone conclusion in this case from the minute the jury returned the verdict." Herring made no statement in allocution.

¶ 17    According to the trial court, Herring's "choices and actions were life-changing to countless people," and regardless of the sentence, the victims' families would never be made whole. The court described the murders of Flisk and Peters as an ambush perpetrated by close-range firing. The court highlighted how evidence showed that Flisk and Peters were shot in the head while standing and later while on the ground. The trial court called the murders "So senseless. So violent. So cold. So calculating."

¶ 18    Before issuing the sentence, the trial court affirmed that it had considered the trial testimony, the factors in aggravation and mitigation, the information from the pre-sentence investigation report, and the testimony of witnesses at the sentencing hearing. The court found, "The only sentence appropriate for the defendant, Timothy Herring, based on the facts of this case and the extensive aggravation presented, is the most severe sentence allowed by law, which in Illinois is mandatory life in prison without the possibility of parole." Accordingly, the court imposed natural life sentences for the murders and a concurrent 14-year sentence for the burglary.

¶ 19    Herring's post-conviction petition raised several claims challenging his conviction and sentence. One is relevant here: his mandatory life sentence violates the Illinois Constitution as applied to him because it did not allow the court to consider his "behavioral, psychological [and] social characteristic[s] at the time he was sentence[d]." According to Herring, his mandatory life sentence did not allow for "consideration for [Herring's] young age and diminished [mental] state and capacity, as well as culpability and the prospect of restoring him to useful citizenship." Herring argued that *Miller v. Alabama*, 567 U.S. 460 (2012), which held mandatory life without parole sentences for juveniles unconstitutional, "has been extended to include young adults 18-21 years old who have been shown to have similar mental defects of immaturity, impetuosity, and the [in]ability to adequately appreciate risks." Herring alleged that he "suffers from impulse control disorders and possibly attention deficit disorder." He did not attach formal documentation of these disorders to his petition. Herring did, however, reference new research studies discussing the transitional period of late teens to early twenties and how, during this time, young people may engage in risky activity due to a lack of brain maturity.

¶ 20    The trial court dismissed Herring's proportionate penalties clause claim on the grounds that Herring failed to provide documentation regarding his mental health or personal characteristics. The court also ruled that Herring had not provided adequate support that a mandatory life sentence for a 19-year-old convicted of murder is unconstitutional. Further, the trial court observed that the original sentencing judge reviewed and considered the presentence investigation report and considered the substantial aggravation provided by the State and minimal mitigation provided by Herring, including his youth and attendant characteristics.

¶ 21                                        Analysis

¶ 22 Under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2018)), a petitioner may claim of violation of constitutional rights in the original trial or sentencing proceedings. *Ruiz*, 2020 IL App (1st) 163145, ¶ 26. The Act segments postconviction proceedings into three stages. *People v. Edwards*, 197 Ill. 2d 239, 244 (2001). At the first stage, the trial court independently reviews the petition to determine whether it "is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). "A petition may be summarily dismissed as frivolous or patently without merit only if the petition has no arguable basis either in law or in fact." *People v. Tate*, 2012 IL 112214, ¶ 9; *Hodges*, 234 Ill. 2d at 16-17. That is, the petition is based on a legal theory "completely contradicted by the record" or on factual allegations determined as "fantastic or delusional." *Hodges*, 234 Ill. 2d at 16-17. At this stage, a petitioner "is not required to prove anything. He [or she] needs only to plead facts justifying further proceedings." *Ruiz*, 2020 IL App (1st) 163145, ¶ 55.

¶ 23 We review the summary dismissal of a postconviction petition *de novo*. *People v. Ligon*, 239 Ill. 2d 94, 104 (2010).

¶ 24 Herring contends he made an arguable showing that his mandatory sentence of life without parole violates the proportionate penalties clause of the Illinois Constitution, where he was functionally a juvenile when he committed the offenses and the trial court failed to consider his young age (19 years old) at sentencing. In his *pro se* petition, Herring alleges that he "suffers from impulse control disorders and possibly attention deficit disorder" and "[a]s a direct result of his under-developed mind, immaturity, diminished mind state and capacity," he wasn't able to appreciate the risks and consequences of his actions. Herring relies on evolving social science evidence showing the impulsivity and risk-taking of young adults and how that impacts criminality.

¶ 25    The State offers three responses: (i) Herring's postconviction claims were conclusory and unsupported by sufficient facts, (ii) Herring forfeited his proportionate penalties claim, having failed to raise it at his sentencing hearing, and (iii) his sentencing hearing adhered to *Miller*, 567 U.S. 460, in light of the decisions in *People v. Holman*, 2017 IL 120655, and *People v. Lusby*, 2020 IL 124046.

¶ 26    We agree with Herring that, at this early stage, he has made a sufficient showing that *Miller* warrants further proceedings.

¶ 27    Under the proportionate penalties clause, "[a]ll penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. Our supreme court has recognized that young adults may raise as-applied challenges to life sentences based on the evolving science on juvenile maturity and brain development under the proportionate penalties clause. See *Harris*, 2018 IL 121932, ¶¶ 46, 48 (citing *People v. Thompson*, 2015 IL 118151). *Harris* and *Thompson* specifically recognized a collateral proceeding under the Act as appropriate for raising this constitutional claim. *Id.* ¶ 48; *Thompson*, 2015 IL 118151, ¶ 44. At the first stage, a defendant "is not trying to prove the merits of [an] as-applied proportionate penalties claim" but "need only state the gist of a constitutional violation, which may then be fleshed out in further proceedings." *Zumot*, 2021 IL (1st) 191743, ¶ 30.

¶ 28    Regarding the State's first argument—that Herring's allegations are insufficiently concrete to warrant second-stage review—we disagree. Herring claims he "suffers from impulse control disorders and possibly attention deficit disorder." Further, he claims that "[a]s a direct result of his underdeveloped mind, immaturity, diminished mind state and capacity, [Herring] wasn't able to appreciate the risks, consequences, and just the serious nature of the charges that he was charged

with and the circumstances associated with these serious charges." At oral argument, the State emphasized, and the dissent does the same, that Herring's reference to the "charges" means he was not referring to his youthful attributes related to committing the offense. This uncharitable reading is incompatible with first stage review and removes the allegations from the context of the claim. These allegations are specific to Herring and linked to his claims about studies surrounding young adult brain development. In this way, Herring "sufficiently alleged that [he] could establish the existence of facts personal to him that warranted consideration of the *Miller* factors in fashioning an appropriate sentence." *People v. Horshaw*, 2021 IL App (1st) 182047, ¶ 150.

¶ 29    The dissent responds, citing *People v. Morris*, 236 Ill. 2d 345, 354 (2010), for the proposition that a petition raising "nonfactual and nonspecific assertions" cannot proceed. But Herring's allegations are factual in the most literal sense—they relate facts. He alleged specific information about his own brain development. In addition, Herring's allegations are specific—he pointed to identified (and confirmable) intellectual deficiencies. The dissent thinks these are conclusory, but determining what is fact and what is conclusion depends on context. Here, the conclusion asserted is that *Miller* should apply to Herring as a young adult. And, we agree, his petition could not survive if that were all he had said. *Howard*, 2021 IL App (2d) 190695, ¶ 46. Herring, however, supported the petition in ways we already have detailed, the dissent's disagreement notwithstanding.

¶ 30    Even if the dissent is right and Herring's allegations are conclusory (they are not), such reasoning is insufficient to affirm. When defining the contours of the low pleading bar for first-stage petitions, our supreme court stayed "[i]n keeping with *** federal decisions" in similar contexts. *Hodges*, 234 Ill. 2d at 16. Those federal decisions explained that a petition should only be dismissed before the State responds where the " 'petitioner can prove *no set of facts* to support

a claim entitling him [or her] to relief.' " (Internal quotation marks omitted.) *Id.* (quoting *Cuadra v. Sullivan*, 837 F.2d 56, 58 (2d Cir. 1988)). The court also cited with approval decisions requiring liberal construction of a *pro se* petition, even where the allegations are "conclusory." *Id.* at 16 n.7 ("[t]he allegations of a *pro se* habeas petition 'though vague and conclusory, are entitled to a liberal construction' " (internal quotation marks omitted) (quoting *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985))). The dissent may disagree on the sufficiency of Herring's claim, but its opinion that his allegations are "conclusory" is not a basis on which to do so.

¶ 31    For similar reasons, we reject the State's insistence that Herring had to have records documenting his alleged attention and impulse control disorders at the first stage. As we said in *Horshaw*, a case involving the more burdensome cause-and-prejudice test for successive petitions, a defendant needs to be specific enough only to show their claim can be substantiated at the later stages. See *id.* If Herring has impulse control disorders, "an underdeveloped mind," or unique "immaturity," he will either substantiate that claim or not with the assistance of counsel later.

¶ 32    Our decision in *Zumot* guides us as well. The defendant there quoted "extensively from scholarly articles and recent court opinions" about juvenile brain development and the law of juvenile sentencing and alleged "the same indicia of youth" applied to a 19-year-old like him. (Internal quotation marks omitted.) *Zumot*, 2021 IL App (1st) 191743, ¶ 12. He did not make specific allegations about his brain development or maturity, instead attaching "various certificates of recognition and completion related to courses he has attended while incarcerated." *Id.* ¶ 13. The court found these factual allegations sufficient because they "can be corroborated, are objective in nature," and are directly relevant to the *Miller* inquiry. *Id.* ¶ 31.

¶ 33    We acknowledge that Herring did not attach documents to his petition like the petitioner in *Zumot*. But, Herring's factual allegations about his brain development at the time of the offense

were more specific than in *Zumot*. And Herring's allegations—that he has impulse control issues and that his mental development is more like that of a juvenile—are capable of independent corroboration in that further investigation at the second or third stage of post-conviction proceedings will either prove or disprove his claim.

¶ 34 We must take into account that "a *pro se* petitioner will 'in all likelihood[ ] be unaware of the precise legal basis for his [or her] claim' " and unaware that specific facts are "critical parts of a complete and valid constitutional claim." *Id.* ¶ 29 (quoting *Edwards*, 197 Ill. 2d at 245). To account for less knowledgeable litigants, at the first stage, we consider " 'the petition's substantive virtue rather than its procedural compliance.' " *People v. Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Hommerson*, 2014 IL 115638, ¶ 11). A petition should be dismissed at the first stage only if "substantially incomplete." *Id.* ¶ 26. And where the court can "reasonably infer" that obtaining documentation supporting certain factual allegations would place an "unreasonable burden" on the petitioner, the court should not dismiss the petition so early in the process. *Id.* ¶ 26.

¶ 35 Herring, it is true, does not explain why he did not attach corroborating documentation, but that reason is apparent on the face of his allegations. His factual claims within his personal knowledge—that he has impulse control issues and an underdeveloped appreciation of the consequences of his actions—will be proven or disproven by evaluations of his mental state and mental capacity. In all likelihood, he will need an expert opinion. Obtaining that kind of evidence from prison and without a lawyer is "unreasonab[ly] burden[some]." Herring's failure to attach "contemporaneous documentation regarding his mental health and personal characteristics," as the State says he must, does not defeat his claim at this early juncture.

¶ 36 Next, the State argues that Herring forfeited his proportionate penalties claim by failing to raise it at his sentencing hearing. Herring correctly notes, however, that the State cites no authority

holding that a young adult forfeits an as-applied challenge to his sentence by failing to raise it at trial. Instead, the State cites cases suggesting that Herring could have made his proportionate penalties clause claim at his original sentencing hearing. *See People v. Dorsey*, 2021 IL 123010; *People v. LaPointe*, 2018 IL App (2d) 160903; *People v. Peacock*, 2022 IL App (1st) 170308-B; *People v. Hoover*, 2019 IL App (2d) 170070. Each of these cases, however, involved a minor or a discretionary sentence. *Dorsey* (14-year-old defendant); *LaPointe* (18-year-old defendant with a discretionary sentence); *Peacock* (17-year-old defendant); *Hoover* (22-year-old defendant with a discretionary sentence).

¶ 37    These differences matter. Herring was 19 years old at the time of the offense—that is, he was on the adult side of the arbitrary line between juveniles and adults. *See Graham v. Florida*, 560 U.S. 48, 74 (2010) (citing *Roper v. Simmons*, 543 U.S. 551, 574 (2005)). Moreover, due to the nature of his conviction, Herring's sentence was mandatory. Indeed, at sentencing, Herring's counsel acknowledged that the proceeding was "all in a way pointless because the State could have put on absolutely nothing today, and there's only one sentence that the law allows you to give, it's a natural life sentence. *** *You're not allowed to consider his age. You're not allowed to consider his background. You're not allowed to consider his family.*" (Emphasis added.) The trial judge reiterated that "the parties are well aware in this case as mandated by law, it is a sentence of mandatory natural life." Unlike the cases the State relies on, an argument attempting to apply *Miller* under the proportionate penalties clause would have been futile at Herring's original sentencing hearing, mainly because the Illinois Supreme Court did not invite adult defendants to raise these claims in postconviction proceedings until 2015. See *Harris*, 2018 IL 121932, ¶ 48 (citing *Thompson*, 2015 IL 118151).

¶ 38    For similar reasons, *Holman* allows further proceedings. In *Holman*, our supreme court rejected a juvenile defendant's constitutional challenge to his sentence, raised in a successive post-conviction petition, on the ground that his original sentencing hearing already contained sufficient consideration of his youth and attendant characteristics. *Holman*, 2017 IL 120655, ¶¶ 47-50. The court reiterated this approach in *Lusby*, 2020 IL 124046, ¶ 52, finding the defendant had "every opportunity to present mitigating evidence but chose not to offer any."

¶ 39    We note some panels of this court have rejected applying *Holman* and *Lusby* at early stages of postconviction proceedings for young adults raising *Miller* claims under the proportionate penalties clause. *E.g.*, *Ruiz*, 2020 IL App (1st) 163145, ¶ 52. These cases reason that *Holman* and *Lusby* do not apply at the early stages because the defendant has not yet established whether *Miller* applies to them at all. *Id.* Accepting, however, the State's argument that *Holman* and *Lusby* theoretically apply, on this record, the State cannot prevail.

¶ 40    The dissent says it is not considering the "merits of whether this sentencing hearing was *Miller* compliant" and then proceeds to do exactly that by insisting that the trial court must have considered Herring's youth on account of the attorney's arguments. *Infra* ¶ 60 n.1. But what were those arguments? Sure, Herring's counsel pointed out he was young, but she also said, "there's only one sentence that the law allows [the court] to give, it's a natural life sentence. *** [The court is] *not allowed to consider* [Herring's] age. [The court is] not allowed to consider his background. [The court is] not allowed to consider his family ***." (Emphasis added.) If these are the arguments on which the dissent relies to assert that the trial court meaningfully considered Herring's age, that is small comfort. Moreover, considering the dissent's repeated emphasis that allegations of youth are insufficient to warrant further proceedings on a young adult's *Miller* claim,

it is perplexing that the dissent would say the trial court's sheer awareness of Herring's youth would support a constitutionally meaningful sentencing hearing.

¶ 41   Most of the trial court's sentencing pronouncement focused on the facts of the offense and the effect on the victims' families. The court described the offenses as "senseless," "violent," and "cold and calculating," characterizations with which we agree. But, aside from saying once that it "considered all the statutory factors in aggravation and mitigation," there is no evidence the trial court considered mitigation, let alone Herring's youth and the circumstances of his youth.

¶ 42   The State spends a considerable number of pages of its brief documenting the evidence of violence Herring committed during the robbery and murders, including many pages in its statement of facts. See Ill. S. Ct. R. 341(i) (eff. Oct. 1, 2020) (appellee need not include its own statement of facts unless "the presentation by the appellant is deemed unsatisfactory"). The dissent similarly distracts by reviewing Herring's criminal history. But, if Herring can prove *Miller* applies to him under the proportionate penalties clause, the severity of Herring's crimes does not alone defeat his claim. See *Ruiz*, 2020 IL App (1st) 163145, ¶ 38 (" '*Roper* and *Graham* emphasized that the distinctive attributes of youth diminish the penological justifications for imposing the harshest sentences on juvenile offenders, *even when they commit terrible crimes*.' " (Emphasis in original.) (quoting *Miller*, 567 U.S. at 472)).

¶ 43   Except for the instrumentalities of the crimes, the sequence of events in *Miller* (robbery—flight—return—murder) is strikingly like Herring's offense. Miller, then 14 years old, watched as his mother conducted a drug deal from their home. *Miller*, 567 U.S. at 468. Miller and his friend followed the buyer to his trailer, where they all smoked marijuana and played drinking games. *Id.* The man passed out, and Miller took $300 from his wallet. *Id.* The man came to and tried to hurt Miller, so the friend hit the man with a baseball bat. *Id.* After the man was subdued and the danger

abated, Miller grabbed the bat again and "repeatedly struck [the man] with it." *Id.* Miller put a sheet over the man's head and said, "I am God, I've come to take your life," before hitting the man again. (Internal quotation marks omitted.) *Id.* The boys left but returned to the trailer later and lit two fires to cover up their crime. *Id.* The man died. *Id.*

¶ 44 The dissent implies that young adult defendants who do not seem impulsive or who committed crimes with terrible facts can never claim *Miller*'s protections. *Miller* gives the lie to that sort of thinking. The defendant in *Miller* repeatedly struck a man with a baseball bat when no longer in danger, took the time to tell the man he was "God" before delivering the final blow, and left before returning to cover up his crimes by lighting a fire and leaving the man to die. And yet, the court in *Miller* announced its protections against life sentences for juvenile offenders on these gruesome facts. In no way do we discount the severity of Herring's present offense or the relevance of his criminal history. Rather, *Miller* demonstrates that the facts of the offense are not for consideration at the stage where Herring must allege (and eventually prove) that *Miller* applies to him.

¶ 45 The facts and circumstances of Herring's crime may result in limited relief if the trial court resentences him and balances those facts against any evidence of youth; the facts of Herring's crime also may suggest that Herring's claim about his youth and attendant circumstances is not credible. But both considerations are premature. As to the first, Herring must show that *Miller* applies to him before the trial court could reweigh aggravation and mitigation at a new sentencing hearing. As to the second, both the trial court and this court are prohibited from making credibility determinations at this stage; whether we *believe* the facts Herring alleges in his petition is irrelevant. *Allen*, 2015 IL 113135, ¶ 45 ("strengths and weaknesses [of a claim's credibility] are best tested at the second or third stages of postconviction review").

¶ 46    To support its argument, the State seizes on a single sentence in *People v. Williams*, 2021 IL App (1st) 190535, ¶ 36 ("the calculated and goal-oriented nature of defendant's conduct belied his argument that he acted impulsively due to an immature brain."). The dissent points out that the State said more about *Williams*—fine—but it cited only this sentence as having "particular relevance here." That sentence, however, was written in the context of the court rejecting the young adult defendant's proportionate penalties clause claim for two unrelated reasons: (i) at age 22, the defendant fell outside the General Assembly's judgment of the line for adulthood begins at 21 (*id.* ¶¶ 34-36), and (ii) the defendant's petition was factually insufficient, referring only to studies about young adult brain development. *Id.* ¶ 33. To read that quoted sentence as embodying the "main holding" of *Williams* is an excessive stretch (*infra* ¶ 62). Even if it were the holding, we do not read the passing comment categorically rebutting a young adult's claim that *Miller* should apply to them.

¶ 47    The State also relies on *People v. Thomas*, 2022 IL App (1st) 200164, but the court there did not find the nature of the defendant's offenses positively rebutted his claim. Indeed, the State's reliance on *Thomas* for this point borders on misleading. The court first found, like the court in *Williams*, that the defendant's pleadings were insufficiently specific to warrant further proceedings. *Id.* ¶ 51 (petition did not address "defendant's particular circumstances"). The State implies the court then held that the record positively rebutted the claim because the trial court did not describe the offenses as impulsive or the defendant as immature. But that is not what the decision says. Instead, the court looked to the record to determine if it could fill in the gaps for the defendant's pleading and found, unlike the record in *Zumot*, that the record did not help the defendant. *Id.* ¶ 53.

¶ 48    Here, as we have said, Herring made specific allegations about himself that can be tested later. We emphasize that we do not decide that Herring should receive the protections *Miller* provides. He will have to factually substantiate his claim that *Miller* should apply to him as a young adult under the proportionate penalties clause. If he does that, he will have to argue that the mitigating circumstances of his youth make him ineligible for a life sentence when balanced against the severity of his offense. But those considerations await. For now, Herring has sufficiently pled a claim that *Miller* applies to him as a young adult sufficient to warrant further proceedings under the Act.

¶ 49    The dissenting justice denigrates a result he does not like by personally attacking the majority as an advocate for a defendant. *Infra* ¶ 64. Of course, we will not respond to offensive name-calling. Suffice it to say that we anchored our analysis to the allegations in Herring's petition or his counsel's arguments, as this opinion attests.

¶ 50    Finally, the dissent construes our analysis as giving "*carte blanche*" for young adult offenders to advance *Miller* claims. *Infra* ¶ 64. Far from it. As we have repeatedly emphasized, the one unifying theme of Illinois case law in this area is that bare allegations of youth and a citation to *Miller* will not do. *Howard*, 2021 IL App (2d) 190695, ¶ 46. Herring has done more than that, and his factual allegations deserve review at the second stage.

¶ 51    Though irrelevant to our legal conclusion, we acknowledge that claims like Herring's are difficult for victims. No one disputes Herring committed senseless murders and, in doing so, took two lives. It can feel intellectually and emotionally dissonant for a person who commits murder to seek any level of mercy. But our constitution protects the best *and* worst of us, and Herring's pleadings afford him the opportunity to prove his entitlement to them.

¶ 52    Reversed and remanded.

¶ 53    PRESIDING JUSTICE LAVIN, dissenting:

¶ 54    The majority is correct. This case is straightforward—it's a clear and unequivocal affirmance given that defendant has not met the legal requirements for a first-stage postconviction petition. I, therefore, respectfully dissent.

¶ 55    The supreme court has made clear that even at the first stage, the "low threshold does not excuse the *pro se* petitioner from providing factual support for his claims; he must supply [a] sufficient factual basis to show the allegations in the petition are 'capable of objective or independent corroboration.' " *People v. Allen*, 2015 IL 113135, ¶ 24 (quoting *People v. Collins*, 202 Ill. 2d 59, 67 (2002)). To that end, section 122-2 of the Act requires that the "petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122-2 (West 2020); see also 725 ILCS 5/122-2.1 (West 2020) (noting, the postconviction court can also examine the original trial record). This is a means of separating the wheat from the chaff, so to speak, and a failure to comply justifies the petition's summary dismissal. *Collins*, 202 Ill. 2d at 66; see also *People v. Delton*, 227 Ill. 2d 247, 255 (2008) (same). In short, a *pro se* defendant must allege enough facts to make out a claim that is arguably constitutional for purposes of invoking the Act. *Hodges*, 234 Ill. 2d at 9. A " gist," means only that the section 122-2 pleading requirements are met. *Id.*

¶ 56    Defendant has not done this. In his postconviction petition, defendant alleged that *Miller* principles should extend to him and his sentence violates our state proportionate penalties clause, where the trial court at sentencing failed to consider his age of nearly 20; his behavioral, psychological, and social characteristics; and his rehabilitative potential. As to his specific background, it bears repeating that defendant alleged:

"[he] suffers from impulse control disorders & *possibly* attention deficit disorder [ADD] & as a direct result of his underdeveloped mind & immaturity, diminished mind state & capacity petitioner wasn't able to appreciate the risks, consequences & just the serious nature of the *charges* that he was *charged* with & the circumstances associated with these serious *charges*." (Emphasis added.)

He alleged he couldn't fully participate in his defense due to his diminished mental capacity. Defendant then cited new research showing people in their early twenties are more akin to juveniles. Defendant attached a verification affidavit. He did not attach any other documents to support his allegations.

¶ 57    I believe the absence of such documents and record support is fatal to defendant's petition. See *Hodges*, 234 Ill. 2d at 10; *Collins*, 202 Ill. 2d at 66. I first note that defendant's allegations, standing alone, can only be described as flimsy at best. Defendant, for example, alleged that he only "*possibly*" has ADD (emphasis added). He also alleged that his immaturity deprived him of understanding the "*charges*," not that it influenced his actions of shooting two people twice in the head (emphasis added). See *People v. Morris*, 236 Ill. 2d 345, 354 (2010) (nonfactual, nonspecific assertions that amount to conclusions cannot survive summary dismissal). However, even liberally construing defendant's allegations, they remain conclusory and utterly insufficient to warrant further proceedings under the Act. See *Harris*, 2018 IL 121932, ¶ 46 (record evidence must show how evolving science applies to a defendant's specific facts and circumstances); *Thompson*, 2015 IL 118151, ¶ 37 ("By definition, an as-applied constitutional challenge is dependent on the particular circumstances and facts of the individual defendant or petitioner."); *Delton*, 227 Ill. 2d at 254 (requiring factual documentation to support the allegations). Defendant could have attached affidavits from family, friends, coworkers, or school officials describing his immature, impulsive,

or ADD-like behavior, or his diminished capacity and inability to appreciate risks/consequences. He likewise could have hired a psychologist and attached the assessment, notwithstanding his status as a prisoner. Defendant could have attached documentation establishing he had rehabilitative potential that was at odds with his earlier immaturity, as alleged.

¶ 58    Defendant did none of these things. Except for his youthful age when he murdered the two victims, his allegations find no other factual support. See *People v. Evans*, 2021 IL App (1st) 172809, ¶¶ 20-21; *cf. People v. Bolanos*, 2022 IL App (1st) 200790, ¶¶ 36-43 (finding the defendant's first-stage petition alleging she was unfit to plead guilty was supported by the record showing her extensive mental health problems before her guilty plea and during her imprisonment). He has not identified the sources, character, and availability of the alleged evidence supporting his petition's allegations. The allegations are not "capable of objective or independent corroboration." *Allen*, 2015 IL 113135, ¶ 34; *cf. Hodges*, 234 Ill. 2d at 17-18. (finding the petition set forth sufficient facts and corroboration where it identified three witnesses who would have testified, absent counsel's alleged ineffectiveness, and attached the witnesses' affidavits). Defendant also has not meaningfully connected his claimed immaturity to the evolving science on youth or the crimes he committed. As a result, defendant's allegations are not well-pled and lack supporting evidence. See *Collins*, 202 Ill. 2d at 68.

¶ 59    What's more, the record belies defendant's factual allegations and claims on appeal by showing his actions were anything but impulsive or lacking in attention. See Merriam-Webster Online Dictionary, https://www.merriam-webster.com/dictionary/impulse (last visited Nov. 7, 2022) [https://perma.cc/PN6T-HGW9] (defining "impulse" as "a sudden spontaneous inclination or incitement to some usually unpremeditated action"). The record shows that in 2007, at age 16, defendant robbed a convenience store of $7,000, firing one shot in the air after pointing the gun at

an employee. While defendant was on parole stemming from that conviction, in 2010, defendant attempted to run over two people in his car and then shot one of them. In that instance, defendant swerved back and forth as he drove down the street; he circled back and drove around three times before trying to run down one victim. A little later, he emerged from the gangway and shot at least seven times in the direction of the two victims, striking one in the back. That victim declined to cooperate in the prosecution out of fear and later died. The gun defendant used in that shooting was the same as in the present offenses. In November 2010, just days before these murders, defendant attended a violence prevention program, which detailed the consequences of reoffending and offered resources. This did not deter him. Instead, defendant decided to fulfill his months-long plan of robbing his neighbor of property and then attempted to cover up the crime by shooting the neighbor and the responding police officer each twice in the head. There is no indication that defendant committed these crimes due to the influence of others or a mental incapacity.

¶ 60    The trial court found defendant was deserving of a natural term of imprisonment, even apart from the fact that it was mandated, based on the cold and calculated nature of his actions. See *People v. Burdine*, 362 Ill. App. 3d 19, 26 (2005) (noting, we generally defer to the trial court's determination of a sentence).[1] The factual bases of defendant's several violent crimes are not just

---

[1]While I do not reach the merits of whether this sentencing hearing was *Miller*-compliant, I wish to correct a misconception by the majority. The majority writes that "there is no evidence the trial court considered mitigation, let alone Herring's youth and the circumstances of his youth." *Supra* ¶ 41. This is incorrect. The record shows that the court expressly said it had considered the statutory factors in aggravation and mitigation, the PSI, and the witnesses' testimony at sentencing. Based on the attorney arguments, the trial court was well aware of defendant's young age when he committed these murders and the other crimes. Contrary to the majority's suggestion otherwise, under *Miller*, at sentencing, trial courts are not required to make findings of fact regarding a child's incorrigibility or issue on-the-record sentencing explanations with an implicit finding of permanent incorrigibility. *Jones v. Mississippi*, ___ U.S. ___, ___, 141 S. Ct. 1307, 1319-21 (2021); see, *e.g.*, *People v. Holman*, 2017 IL 120655, ¶¶ 17, 49 (finding the sentencing hearing *Miller*-compliant where the trial court stated it had considered the sentencing factors in mitigation and aggravation). If no such on-the-record findings are required for a juvenile, they certainly cannot be required for defendant, and in any event, the law dictates otherwise. See *People v. Evans*, 373 Ill. App. 3d 948, 968 (2007) (noting that a trial court is not required to detail on the record its sentencing process or to make express findings as to a defendant's rehabilitative potential).

"at odds" with his claim of impulsivity, they are quintessentially antithetical to it. Defendant's history of antisocial behavior, including his planned, violent criminal conduct, is utterly devoid of immature impulsivity or youthful transience. See *People v. Coty*, 2020 IL 123972, ¶ 39 (noting that the *Miller* decision is founded principally upon the transient characteristics of youth). As a result, defendant's petition lacks an arguable basis in fact. See *Morris*, 236 Ill. 2d at 354 (a petition lacks an arguable basis in fact when it is belied by the record).

¶ 61    Notably, it is the distinctive attributes of youth that diminish the justifications for imposing life without parole on juveniles. *Williams*, 2021 IL App (1st) 190535, ¶ 22. Defendant failed to establish he possessed those specific traits or a background at nearly age 20 that made him more akin to a juvenile. See *Williams*, 2021 IL App (1st) 190535, ¶¶ 31, 36; *cf. People v. Savage*, 2020 IL App (1st) 173135, ¶¶ 72-76 (finding the opposite where the defendant's allegations were supported by detailed hospital records, the PSI, and the sentencing hearing). Consequently, the mandatory life sentence imposed on defendant, who was an emerging adult, for the murder of two people cannot be deemed disproportionate based on this record. See *People v. Leon Miller*, 202 Ill. 2d 328, 338 (2002); *Hilliard*, 2021 IL App (1st) 200112, ¶¶ 49-50 (noting, a sentence that is not otherwise cruel and unusual does not become so merely because it is mandatory). In other words, defendant has not pled sufficient facts to support his legal theory that he was more akin to a juvenile, such that his mandatory sentence was arguably constitutionally disproportionate if *Miller* principles applied. *Cf. Hodges*, 234 Ill. 2d at 21. The remaining allegations are effectively copied from *Miller* and, therefore, are likewise conclusory and insufficient to warrant further proceedings. All this renders defendant's petition indisputably meritless. See *Hodges*, 234 Ill. 2d at 16.

¶ 62    In reaching the opposite conclusion, the majority distinguishes *Williams*, contending that the State only "seizes on a single sentence" from that case. *Supra* ¶ 46. This misconstrues the State's brief, which discusses and relies on *Williams* in depth. See State's Brief, pages 39 and 44. The majority also misconstrues *Williams*, itself. In that case, the defendant was age 22 when he murdered five people (along with his codefendant) but claimed in his *pro se* postconviction petition that *Miller* principles should extend to him and his sentence was disproportionate. The defendant there cited only general articles finding the brain continues to mature into one's mid-twenties. In rejecting the defendant's petition at the first stage, this court found the defendant failed to allege any particular facts that rendered him the functional equivalent of a juvenile and, moreover, the record showed the "calculated and goal-oriented nature of defendant's conduct belied his argument that he acted impulsively due to an immature brain." *Williams*, 2021 IL App (1st) 190535, ¶¶ 31-33, 36. The *Williams* court added that the defendant also was older than age 21 (which the legislature now considers adulthood) and his mandatory sentence for murdering two people was not disproportionate. The majority characterizes the reference in *Williams* concerning the record belying the defendant's claims as a "passing comment," but it was one of the main reasons behind the holding in *Williams*. Moreover, in its brief before this court, the State aptly drew comparisons to *Williams*, as my analysis makes clear.

¶ 63    I also wish to emphasize that *Harris* does not dictate that a first-stage petition like the present must advance. Rather, *Harris*, 2018 IL 121932, ¶ 48, observed that a defendant is not "necessarily foreclosed from raising his as-applied challenge" in a collateral proceeding and made no mention of what's necessary to meet the low threshold for first-stage proceedings (other than noting the Act allows for raising constitutional questions that depend on facts outside the record). See also *Thompson*, 2015 IL 118151, ¶ 44 (same). Contrary to the majority's suggestion, *Harris*

did not hold that young adult criminals like defendant are exempt from the factual pleading requirements of the Act under section 122-2. The majority has not cited any supreme court case creating any such exception for a defendant.

¶ 64    Yet, in permitting this petition to advance, the majority takes the forgiving standards of first-stage postconviction review to an extreme not contemplated by the Act or case law interpreting it. It is not the job of this court to advocate for a defendant, and a petition that consists only of mere possibilities, speculation, guesswork, or conjecture is insufficient. The majority's result gives defendants *carte blanche* to explain away criminal behavior by merely asserting, absent any support, that they suffer from self-diagnosed psychological ailments. If that's enough at the first stage under the Act, every petition can then likely proceed. This will divert precious resources of the judiciary and attorneys from cases that do actually merit real attention.

¶ 65    Last, I wish to note that the majority essentially claims defendant's mandatory sentence was unchallengeable. *Supra* ¶ 37. The majority suggests that defendant had no recourse at sentencing, which is false. The mandatory nature did not preclude defendant from arguing at his 2015 sentencing hearing that his life sentence was constitutionally disproportionate under *Miller* (decided three years before) or prior precedent. See also *Leon Miller*, 202 Ill. 2d at 335-43; *Dorsey*, 2021 IL 123010, ¶ 74.

¶ 66    For the above-stated reasons, I respectfully dissent.

---

### *People v. Herring*, 2022 IL App (1st) 210355

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 11-CR-197; the Hon. Mary Margaret Brosnahan, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Douglas R. Hoff, and Joseph Michael Benak, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Enrique Abraham, Douglas P. Harvath, and Marci Jacobs, Assistant State's Attorneys, of counsel), for the People. |