2024 IL App (1st) 221816-U
No. 1-22-1816

FIRST DIVISION
December 2, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 00 CR 5868 |
| | ) | |
| TEODORO BAEZ, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Ursula Walowski, |
| | ) | Judge Presiding. |

_____

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Lavin and Cobbs concurred in the judgment.

**ORDER**

¶ 1      *Held:* The summary dismissal of defendant's *pro se* postconviction petition is affirmed, where (1) defendant's petition failed to establish the "gist" of a *Miller* claim and (2) defendant's claim that his mandatory life-without-parole sentence violates the proportionate penalties clause because his sentence does not account for his mental illness or his rehabilitative potential was rebutted by the record.

¶ 2      Defendant Teodoro Baez appeals the summary dismissal of his *pro se* petition for postconviction relief. Baez contends that he presented the gist of a constitutional claim that his mandatory life-without-parole sentence violates the proportionate penalties clause of the Illinois

Constitution since the sentence does not account for his status as an emerging adult. In the alternative, he argues that his mandatory life-without-parole sentence violates the proportionate penalties clause of the Illinois Constitution since the sentence does not account for his mental illness or rehabilitative potential. We affirm.

¶ 3                                                    BACKGROUND

¶ 4          On February 29, 2000, a grand jury indicted defendant with four counts of first degree murder (720 ILCS 5/9-1(a)(1), (a)(2) (West 2000)) and two counts of concealment of a homicidal death (*id.* § 9-3.1(a)) for the deaths of Juan Estrada and Janet Mena. The two murders were both brutal and heinous, compounded by the dismemberment of the bodies and concealment of the murders. In his statement to the police, defendant described the murders, dismemberment, and concealment of the murders in excruciating detail. Defendant was 23 years old at the time of the offense and never claimed that his statement to the police was involuntary.

¶ 5          On June 27, 2003, defendant pled guilty to two counts of first degree murder, and the State dropped the four remaining charges. The circuit court determined that defendant's plea was knowing and voluntary. On March 9, 2004, the circuit court sentenced defendant to death on both counts.[1]

¶ 6          On October 18, 2005, the Illinois Supreme Court remanded defendant's case to the circuit court with directions to allow him to file a late motion to withdraw his guilty plea. On remand, the circuit court denied his motion to withdraw his guilty plea. On February 25, 2011, the Illinois Supreme Court affirmed the circuit court's decision and defendant's death sentence. *People v.*

---

[1] The underlying facts of defendant's guilty plea and sentencing are recounted in more detail in the Illinois Supreme Court's prior decision. *People v. Baez*, 241 Ill. 2d 44 (2011). We include only those facts that are pertinent to the resolution of the instant appeal.

*Baez*, 241 Ill. 2d 44, 138 (2011). On March 24, 2011, defendant's death sentence was commuted to a sentence of life imprisonment due to the abolition of the death penalty in Illinois.

¶ 7       On September 15, 2022, defendant filed a *pro se* petition for postconviction relief. His petition, in its entirety, alleged:

> "Now Comes Defendant and Petitions this court to allow him to demonstrate that his Constitutional rights were violated in the following way; and to grant him relief under the post-conviction act:
>
> Section II of Article I of the Bill of Rights listed in the ILLINOIS STATE CONSTITUTION states that penalties will be determined with the objective of restoring the offender to useful citizenship.
>
> This petitioner is including with this petition a host of documentation and certificates that demonstrate his redemptive qualities and potential usefulness as a citizen.
>
> This petitioner is also including proof of his mental illness that should further mitigate the severity of his sentence. Although mental illness was previously brought up on defendants direct appeal to the Supreme Court, new evidence does suggest that serious mental illness played a part in defendants crime. Diagnosis that was at one point made by mental health professionals out to be 'provisional' / subjective has now come to be concrete, and should be considered as mitigation in regards to said offenses.
>
> The sentence as it stands violates the Illinois State Constitution in that [l]ife with-out parole will never restore the offender to useful citizenship [*sic*]."

Defendant did not mention *Miller v. Alabama*, 567 U.S. 460 (2012), his age or youth, or research regarding the evolving science on juvenile maturity and brain development. Defendant attached his presentencing investigative report; Illinois Department of Corrections Psychiatric Progress Notes, which documented his bipolar schizoaffective disorder; and certificates of achievement he earned while incarcerated.

¶ 8       On October 25, 2022, the circuit court summarily dismissed defendant's petition in a written order. Defendant appealed.

¶ 9                                          ANALYSIS

¶ 10                                    *Miller* Claim

¶ 11        Defendant argues that his postconviction petition alleges an arguable claim pursuant to

*Miller v. Alabama*, 567 U.S. 460 (2012), that his mandatory life-without-parole sentence violates

the proportionate penalties clause of the Illinois Constitution as applied to him based on his

status as an emerging adult. The State responds that defendant raises a new claim on appeal.

Defendant concedes that he did not raise this specific claim in his petition. He admits that he

raised a general claim that his life-without-parole sentence violates the proportionate penalties

clause because the sentence does not account for his mental illness or his rehabilitative potential.

¶ 12        The Post-Conviction Hearing Act ("Act") provides a three-stage process by which

criminal defendants may assert that a substantial denial of their constitutional rights resulted in

their conviction. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009). "Section 122-2 of the Act requires

that a postconviction petition must *** 'clearly set forth the respects in which petitioner's

constitutional rights were violated.' " *Hodges*, 234 Ill. 2d at 9 (quoting 725 ILCS5/122-2 (West

2022)). At the first stage, the petitioner need only present a limited amount of detail in the

petition to establish the "gist" of a constitutional claim. *Hodges*, 234 Ill. 2d at 9. The "gist"

standard is a low threshold. *Id*. Still, *pro se* petitioners are not excused from providing any

factual detail at all surrounding the alleged constitutional violation. Moreover, the Illinois

Supreme Court has stated:

> " ' "[t]he question raised in an appeal from an order dismissing a post-
> conviction petition is whether the allegations *in the petition*, liberally
> construed and taken as true, are sufficient to invoke relief under the Act."
> (Emphasis added.) Thus, any issues to be reviewed must be presented in the
> petition filed in the circuit court.' " (Emphasis in original.) *People v. Cathy*,
> 2012 IL 111746, ¶ 21 (quoting *People v. Jones*, 211 Ill. 2d 140, 148 (2004),
> quoting *People v. Coleman*, 183 Ill. 2d 366, 388 (1988)).

We review *de novo* a circuit court's order summarily dismissing a *pro se* postconviction petition. *Cathy*, 2012 IL 111746, ¶ 17.

¶ 13    Under the proportionate penalties clause, "[a]ll penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. The Illinois Supreme Court has recognized that in postconviction proceedings, young adults may raise as-applied challenges to life sentences based on the evolving science on juvenile maturity and brain development under the proportionate penalties clause. *People v. Harris*, 2018 IL 121932, ¶ 48. We find *People v. Herring*, 2022 IL App (1st) 210355 and *People v. Zumot*, 2021 IL App (1st) 191743, instructive on the issue of whether defendant has alleged an as-applied *Miller* claim.

¶ 14    In *Herring*, the petitioner alleged that "his mandatory life sentence did not allow for 'consideration for [his] young age and diminished [mental] state and capacity, as well as culpability and the prospect of restoring him to useful citizenship.' " *Herring*, 2022 IL App (1st) 210355, ¶ 19. He further argued that *Miller* " 'has been extended to include young adults 18-21 years old who have been shown to have similar mental defects of immaturity, impetuosity, and the [in]ability to adequately appreciate risks.' " *Id*. He stated the mental disorders he suffered from, but he did not include formal documentation of the disorders. *Id*. He referenced research studies "discussing the transitional period of late teens to early twenties and how, during this time, young people may engage in risky activity due to a lack of brain maturity." *Id*. We determined that the petition asserted a conclusion that "*Miller* should apply to [the petitioner] as a young adult" and supported that conclusion with "specific information about [the petitioner's] own brain development." *Id*. ¶ 29. We emphasized that "the one unifying theme of Illinois case law in this area is that bare allegations of youth and a citation of *Miller* will not do." *Id*. ¶ 50.

¶ 15     In *Zumot*, the petitioner alleged that his *de facto* life sentence violated the proportionate penalties clause of the Illinois Constitution. *Zumot*, 2021 IL App (1st) 191743, ¶ 12. He extensively quoted "scholarly articles and recent court opinions recognizing that young adults are often, like juveniles, more impulsive and susceptible to peer pressure than mature adults" and argued, " 'the same indicia of youth that made mandatory life imprisonment without parole unconstitutional for those under the age of 18 in [*Miller*] also applie[d] to 19-year-olds' like him." *Id*. He attached the transcript of his sentencing hearing; various certificates of recognition and completion related to courses he attended while incarcerated; a research article discussing young adults and the law; and a copy of Public Act 100-1182, which established parole for young-adult offenders. *Id*. ¶ 13. He further alleged that " '[t]hese pursuits and achievements coincides with the scientific evidence and the United States Supreme Court's holdings and the evolving field of jurisp[r]udence by Illinois Courts that juveniles and young adults possess "Diminished Culpability" and "Greater Prospects for Reform." ' " *Id*. ¶ 31. The *Zumot* court determined that the petitioner stated a gist of a *Miller* claim since he drew a connection between his own circumstances and studies showing that young adults are more like juveniles than fully mature adults. *Id*.

¶ 16     Here, defendant's petition does not contain any allegations about how the evolving science on juvenile maturity and brain development that help form the basis for *Miller* applies to defendant's specific facts and circumstances. While "bare allegations of youth and a citation of *Miller* will not do" (*Herring*, 2022 IL App (1st) 210355, ¶ 50), defendant's petition is completely devoid of any mention of youth, *Miller*, or the evolving science on juvenile maturity and brain development.

¶ 17    Defendant concedes that his petition did not allege that his mental illness "would have arrested his development such that he would have been one of those emerging adults who functioned more like a juvenile at the time of his offense, supporting his claim that his life-without-parole sentence violated the proportionate penalties clause." Still, defendant requests that we overlook this omission and interpret his general claim, that his life-without-parole sentence violates the proportionate penalties clause because the sentence does not account for his mental illness or his rehabilitative potential, as a *Miller* claim, since he need only present a limited amount of detail in the petition. While true, a *pro se* petitioner still must allege enough facts to "clearly set forth the respects in which [his] constitutional rights were violated" (725 ILCS 5/122-2 (West 2022)), and "nonfactual and nonspecific assertions that merely amount to conclusions will not survive summary dismissal under the Act." *People v. Morris*, 236 Ill. 2d 345, 354 (2010). Again, defendant never asserts, or even concludes, that *Miller* should apply to him since his mental illness arrested his development such that he would have been an emerging adult who functioned more like a juvenile at the time of his offense. Put simply, defendant's *pro se* postconviction petition, liberally construed, fails to allege a *Miller* claim, and we may not review any issues not raised in the petition. *Cathy*, 2012 IL 111746, ¶ 21.

¶ 18                          Proportionate Penalties Claim

¶ 19    Defendant also alleges a general claim that his mandatory life-without-parole sentence violates the proportionate penalties clause because his sentence does not account for his mental illness or his rehabilitative potential.

¶ 20    At the first stage, the circuit court shall dismiss the petition if it determines that the petition is frivolous or is patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). A petition is frivolous or patently without merit only if the petition has no arguable basis, either in

law or in fact. *Hodges*, 234 Ill. 2d at 11-12. "A claim has no arguable basis when it is based on an indisputably meritless legal theory, such as one completely contradicted by the record, or a fanciful factual allegation, such as one that is fantastic or delusional. [Citation.]" *People v. Lewis*, 2017 IL App (1st) 150070, ¶ 13.

¶ 21      Under the proportionate penalties clause, "[a]ll penalties shall be determined according to the seriousness of the offense and with the objective of restoring the offender to useful citizenship." Ill. Const. 1970, art. I, § 11. "A statute may be deemed unconstitutionally disproportionate if *** the punishment for the offense is *** so wholly disproportionate to the offense as to shock the moral sense of the community***." *People v. Miller*, 202 Ill. 2d 328, 338 (2002). "To comply with this provision, the court must balance the goals of retribution and rehabilitation, carefully considering all factors in aggravation and mitigation." *People v. Robinson*, 2021 IL App (1st) 192289, ¶ 46. " 'To determine whether a penalty shocks the moral sense of the community, we must consider objective evidence as well as the community's changing standard of moral decency.' " *Robinson*, 2021 IL App (1st) 192289, ¶ 46 (quoting *People v. Hernandez*, 382 Ill. App. 3d 726, 727 (2008)). "An as-applied challenge requires a showing that the statute violates the constitution as it applies to the facts and circumstances of the challenging party." *People v. Thompson*, 2015 IL 118151, ¶ 36.

¶ 22      Defendant contends that his sentence was mandatory since his death sentence was commuted into a mandatory life sentence based on his multiple murder conviction. See 730 ILCS 5/5-8-1(a)(1)(c)(ii) (West 2000). However, at the time of his sentencing, the circuit court exercised its discretion in imposing the death penalty. See 720 ILCS 5/9-1(b), (c) (West 2000). A sentence is discretionary if it allows the sentencing court to consider different factors in determining the sentence. *People v. Handy*, 2019 IL App (1st) 170213, ¶ 41. Accordingly,

defendant's sentence was discretionary since the circuit court considered evidence in aggravation and mitigation when deciding to impose the death penalty. See *People v. Baez*, 241 Ill. 2d 44, 70-93 (2011).

¶ 23       Here, the sentencing court considered defendant's mental illness as a mitigating factor (*Baez*, 241 Ill. 2d at 80-88, 90), even though our supreme court has repeatedly held that mental illness may not be inherently mitigating (*People v. Thompson*, 222 Ill. 2d 1, 42-43 (2006)). The sentencing court also considered that "the state of Michigan did everything they could to try to turn [defendant's] conduct around," but noted his criminal acts continued. (Internal quotation marks omitted.) *Id*. at 90. The sentencing court ultimately determined that "[t]here [were] *no* mitigating factors sufficient to preclude the imposition of the death penalty." (Emphasis added; internal quotation marks omitted.) *Id*. at 92. Moreover, " 'there is no indication [in our constitution] that the possibility of rehabilitating an offender was to be given greater weight and consideration than the seriousness of the offense in determining a proper penalty.' " *People v. Coty*, 2020 IL 123972, ¶ 24 (quoting *People v. Huddleston*, 212 Ill. 2d 107, 129-30 (2004), quoting *People v. Taylor*, 102 Ill. 2d 201, 206 (1984)). Accordingly, the record rebuts defendant's claim that his sentence does not account for his mental illness or rehabilitative potential, since the sentencing court considered both in fashioning his sentence.

¶ 24                                        Waiver

¶ 25       We need not address the State's contention that, because defendant was sentenced following an open (not negotiated) guilty plea, he has waived the right to bring a proportionate penalties challenge to the constitutionality of his sentence pursuant to *People v. Jones,* 2021 IL 126432 and *People v. Aceituno*, 2022 IL App (1st) 172116, since we have  determined that his postconviction petition failed to state a "gist" of a constitutional claim.

¶ 26                                        CONCLUSION

¶ 27        For the reasons stated above, we affirm the circuit court's summary dismissal of defendant's *pro se* postconviction petition.

¶ 28        Affirmed.