2021 IL App (1st) 200250-U

No. 1-20-0250

Order filed October 13, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 155 |
| | ) | |
| DWAYNE BURKE, | ) | Honorable |
| | ) | Patrick K. Coughlin, |
| Defendant-Appellant. | ) | Judge, presiding. |
| | ) | |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Gordon and Justice Ellis concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The summary dismissal of defendant's *pro se* postconviction petition is affirmed where defendant failed to state an arguable claim that his counsel on direct appeal provided ineffective assistance by failing to argue that trial counsel was ineffective for not presenting expert testimony regarding the reliability of eyewitness identifications.

¶ 2    Defendant Dwayne Burke appeals from the summary dismissal of his *pro se* petition for

relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)).

On appeal, he alleges the circuit court erred in summarily dismissing his postconviction petition where he set forth an arguable claim that his counsel on direct appeal was ineffective for not arguing trial counsel's ineffectiveness based on trial counsel's failure to present expert testimony regarding the reliability of eyewitness identifications. We affirm.

¶ 3    Following a 2015 jury trial, defendant was found guilty of two counts of armed robbery (720 ILCS 5/18-2(a)(2) (West 2008)) and sentenced, as a habitual criminal, to concurrent terms of mandatory natural life imprisonment. See 730 ILCS 5/5-4.5-95(a) (West 2008). We affirmed on direct appeal. *People v. Burke*, 2018 IL App (1st) 160178-U. Because we set forth the facts on direct appeal, we recount them here to the extent necessary to resolve the issue raised in this appeal.

¶ 4    At trial, Theresa Watt testified that on September 10, 2009, she was working at a gas station in Dolton with her coworker Ruthie Love. Watt stood inside the enclosed cashier's booth, which contained two cash registers. The booth was located to the left of the gas station's front entrance and had a door on the end opposite from the front entrance. Only employees were allowed to enter the cashier's booth.

¶ 5    At about 3:42 p.m., a young man entered the gas station. Watt described the man as being about five feet seven inches or five feet eight inches tall, wearing a cap, and carrying a backpack. The man made eye contact with Watt and opened the door to the cashier's booth. The man revealed the handle of a firearm and said, " 'Give me your money and you won't get hurt.' " Watt held up her hands, stepped back, and opened the register. The man took the money in the register and then approached Love's register. Love likewise opened her register and stepped back¸ and the man removed money from Love's register. The man took some cigarettes from behind Watt and Love,

placed the money and cigarettes in his backpack, and exited the gas station. The police were then called and arrived on the scene.

¶ 6     On cross-examination, Watt clarified that the door to the cashier's booth was located between the two cash registers, which were about two feet from one another. The man had to walk past Love's register to enter the booth. Watt could not recall if the man was wearing glasses of any kind, but testified he was not wearing gloves. The man spent no more than five minutes taking the money from each register. Watt testified that the entire incident lasted no more than 10 minutes. Afterwards, Love called the police, who arrived about 20 minutes later. Watt described the offender to the police, but could not recall describing the offender's facial hair or any other distinctive characteristics.

¶ 7     Love testified consistently with Watt but added that the gas station was at the 1400 block of East Sibley Boulevard, and additionally identified the offender in court as defendant. The first register defendant opened was empty, so he took money from a "Lottery drawer" beneath the register. Defendant then proceeded to take the money from Love's register. On November 18, 2009, Love went to the police station and identified defendant from a lineup, a photograph of which the State entered into evidence.

¶ 8     On cross-examination, defendant's trial counsel asked whether the booth separated the cash registers, and Love stated, "No." Counsel then asked whether Love's booth was next to Watt's booth "and then the door," and Love stated, "It is one room. It is not a separate, divided room." She confirmed that defendant wore a cap and she "believe[d]" he wore sunglasses as well. She also testified that the bag defendant held was a backpack, but she "didn't look at it that hard." Love confirmed that she identified defendant from a lineup, but had never seen him before, and did not

know a man with defendant's name. Defense counsel asked how Love knew defendant's name, and she responded, "My subpoena." She stated defendant was only inside the store for a "few" minutes, and the encounter was "very brief."

¶ 9    Dolton police detective Steven Biddle testified that on November 18, 2009, he conducted the lineup in which Love identified defendant as the offender. On cross-examination, Biddle confirmed that according to a report containing the physical descriptions of the people in the lineup, defendant was 5 feet 11 inches tall.

¶ 10    Defendant called Dolton police officer Bryan Caridine, who testified that he arrived at the scene at 3:44 p.m. and spoke with Watt and Love inside the gas station. Caridine received a description that the offender wore a tan hat, dark sunglasses, tan shirt, and black jeans. Watt and Love gave the same description. When Caridine arrived at the gas station, no one was "pointed out" to him as the suspect, and Caridine did not know if anyone was arrested that day. Caridine testified that he did not inventory any evidence at the scene.

¶ 11    In closing, defendant's trial counsel argued that the State failed to prove that defendant was the offender. Counsel recounted that Watt described the offender as being five feet seven inches or five feet eight inches and wearing a cap, and Love added that the offender had sunglasses. Counsel remarked that defendant is "clearly not 5, 7 to 5, 8, not as he sits there and not as it was documented during the lineup." Counsel asserted that Watt and Love had never seen the offender before, that Love testified that the incident happened very quickly, and that there was no suspect on scene. Additionally, counsel asserted that there was no fingerprint or DNA evidence even though the offender was not wearing gloves during the incident, and "[n]othing was recovered that connects [defendant] to this incident." Counsel argued that an "extremely significant" period of

time passed between the incident and the date on which Love identified defendant from the lineup, and defendant did not fit the description of the offender given on the date of the incident.

¶ 12    The jury found defendant guilty of two counts of armed robbery of Watt and Love respectively. The trial court denied defendant's motion for new trial.

¶ 13    The court imposed concurrent mandatory natural life sentences on defendant as a habitual criminal for both armed robbery counts.

¶ 14    On direct appeal, defendant argued the State failed to present sufficient evidence that he was the offender or that he had a firearm, the State made improper comments in closing argument, the Habitual Criminal Act (730 ILCS 5/5-4.5-95(a) (West 2008)) violated his constitutional rights, and his convictions violated the one-act, one-crime doctrine. We affirmed. *People v. Burke*, 2018 IL App (1st) 160178-U.

¶ 15    On November 20, 2019, defendant filed a *pro se* postconviction petition alleging that trial counsel was ineffective for failing to call an "identification expert witness." He claimed only the testimony of one "unreliable" eyewitness, necessarily Love, connected him to the armed robbery. Defendant claimed that an identification expert would have testified that Love's attention could not have been focused on the assailant's face and apparel, the object that appeared to be a firearm, and both cash registers within the "few quick minutes" of the incident. The expert additionally would have testified that Love could not have known exactly what the offender looked like without his sunglasses and hat. According to defendant, the expert also would have testified that Love would not have remembered the offender's face by the time she viewed the lineup, and would have

raised Love's "age factor in far as [*sic*] memory and eye sight strength or lack of strengths."[1] Defendant alleged that the State failed to present any physical or video evidence, and that his trial counsel "submitted nothing in the way of conducting a meaningful adversarial testing of the State's case."

¶ 16    Additionally, defendant asserted that his trial counsel was ineffective for failing to call witnesses "for determination of" whose prints were recovered from the scene, request evidence regarding the recovered prints, run the recovered prints through a database, and impeach the State's identifying eyewitness. He also alleged that he was detained and placed in lineups based on an unconstitutional investigative alert. Lastly, he claimed that his counsel on direct appeal was ineffective for failing to raise the claims in his petition, and for failing to argue the trial court abused its discretion by not allowing defendant to impeach an eyewitness with her criminal history.

¶ 17    Defendant attached to his petition Freedom of Information Act (FOIA) requests that he made for copies of "fingerprints and DNA reports," witness statements, investigative alerts, warrants, "investigative notes" and reports, and photographs of the lineup and crime scene. Defendant also attached the FOIA responses he received and further letters he sent in reply.

¶ 18    Additionally, defendant attached an affidavit, averring that he "tried to obtain*** through the FOIA the crime scene investigative reports of the collection of evidence from the crime scene in particular, recovery of prints and DNA." He also stated he requested a copy of an investigative alert that was issued for his arrest, and any warrants for his arrest. However, defendant claimed he did not receive the materials as to his case in Dolton.

---

[1] The transcript of Love's 2015 trial testimony established she was then 64 years old, making her 58 years old at the time of the 2009 robberies.

¶ 19    On December 13, 2019, the circuit court summarily dismissed defendant's postconviction petition as frivolous and patently without merit. The court found in relevant part that defendant's trial counsel made "repeated attempts" to cast doubt on the identification of defendant as the offender. After recounting the many ways in which counsel engaged in this trial strategy, the court stated it was "unable to conclude that trial counsel's performance and strategy were so unsound and amounted to a complete failure to conduct any meaningful adversarial testing." The court also found that defendant failed to allege he was arguably prejudiced by the failure to call an identification expert, observing that this court previously found that " 'all five of the *Biggers* factors weigh in favor of the reliability of Love's identification of defendant' " (*Burke*, 2018 IL App (1st) 160178-U, ¶¶ 24-29). Additionally, the court found that defendant failed to support his claim with any evidence or an affidavit from an identification expert, and also failed to explain the absence of these materials.

¶ 20    On appeal, defendant argues that the circuit court erred in summarily dismissing his *pro se* postconviction petition, where he stated an arguable ineffective assistance of counsel claim. Namely, he asserts that his counsel on direct appeal was ineffective for failing to state an ineffective assistance claim against trial counsel, who in turn was ineffective for failing to present expert testimony regarding the reliability of eyewitness identifications.

¶ 21    The Act provides a three-stage method for persons under criminal sentence to "assert that their convictions were the result of a substantial denial of their rights under the United States Constitution or the Illinois Constitution or both." *People v. Hodges*, 234 Ill. 2d 1, 9-10 (2009). Here, the circuit court summarily dismissed defendant's postconviction petition at the first stage. At the first stage of postconviction proceedings, "[t]he allegations of the petition, taken as true and

liberally construed, need only present the gist of a constitutional claim." *People v. Brown*, 236 Ill. 2d 175, 184 (2010). This standard presents a "low threshold," and "[a] petitioner need present only a limited amount of detail and is not required to include legal argument or citation to legal authority." (Internal quotation marks omitted.) *Id.*

¶ 22 The Act authorizes the circuit court to summarily dismiss a petition at the first stage through a written order where "the court determines the petition is frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2018). A postconviction petition is "frivolous or patently without merit" where it "has no arguable basis either in law or in fact." *Hodges*, 234 Ill. 2d at 11-12. A petition lacks an arguable basis in law or in fact where it "is based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* at 16. "An example of an indisputably meritless legal theory is one which is completely contradicted by the record," and "[f]anciful factual allegations include those which are fantastic or delusional." *Id.* at 16-17. We review *de novo* the summary dismissal of a postconviction petition. *People v. Tate*, 2012 IL 112214, ¶ 10.

¶ 23 As an initial matter, the Act requires that a postconviction petition be both verified by affidavit (725 ILCS 5/122-1(b) (West 2018)) and supported by "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached" (725 ILCS 5/122-2 (West 2018)). The failure to comply with these requirements is "fatal" and "by itself justifies the petition's summary dismissal." (Internal quotation marks omitted.) *People v. Collins*, 202 Ill. 2d 59, 66 (2002).

¶ 24 Defendant failed to comply with these requirements, as he submitted no affidavit or evidence supporting the claim in his petition that he now appeals, and failed to explain the unavailability of these supporting materials. While defendant attached an affidavit and copies of

his FOIA requests regarding other claims in his petition, none of these materials relate to his ineffective assistance claim premised on counsel's failure to present an identification expert who allegedly would have testified in defendant's favor. Thus, his contentions regarding what the expert testimony would have been are unsupported and entirely speculative. The circuit court was justified in summarily dismissing defendant's claim on this basis alone. *Id.*

¶ 25 Defendant's failure to comply with the Act's procedural requirements notwithstanding, the trial court also properly dismissed his ineffective assistance of trial and appellate counsel claims as frivolous and patently without merit.

¶ 26 Defendant's postconviction ineffective assistance of trial counsel claim is forfeited. The claim is premised on trial counsel's failure to present an expert witness regarding the unreliability of eyewitness identifications. Trial counsel's failure to present such an expert witness is evident from the trial record. Defendant therefore could have raised the claim on direct appeal, and his failure to do so results in its forfeiture. *People v. Petrenko*, 237 Ill. 2d 490, 499 (2010) ("issues that could have been raised on direct appeal but were not are forfeited" in a postconviction proceeding).

¶ 27 To circumvent that waiver, defendant alleged ineffective assistance of appellate counsel for failing to raise trial counsel's ineffectiveness on direct appeal. See *id.* (forfeiture rules are relaxed with respect to postconviction claims stemming from appellate counsel's ineffectiveness). We find defendant did not state an arguable claim of ineffective assistance of appellate counsel.

¶ 28 The sixth amendment to the United States Constitution (U.S. Const., amend. VI) guarantees those accused of crime the right to the effective assistance of counsel. *People v. Cole*, 2017 IL 120997, ¶ 22. To prevail on an ineffective assistance claim, a defendant must establish that (1)

"counsel's performance was objectively unreasonable under prevailing professional norms," and (2) "there is a 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' " *People v. Cathey*, 2012 IL 111746, ¶ 23 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

¶ 29     To satisfy the deficiency prong, the defendant must show that counsel's performance was so deficient that counsel "was not functioning as the 'counsel' guaranteed by the sixth amendment." *People v. Easley*, 192 Ill. 2d 307, 317 (2000). In doing so, "the defendant must overcome the strong presumption that the challenged action or inaction might have been the product of sound trial strategy." *Id.* To satisfy the prejudice prong, the defendant must show "actual prejudice, not simply speculation that defendant may have been prejudiced." *People v. Patterson*, 2014 IL 115102, ¶ 81. "A 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." *Id.* This same standard applies to claims asserting ineffective assistance of counsel both at trial and on direct appeal. *People v. Pitsonbarger*, 205 Ill. 2d 444, 465 (2002).

¶ 30     At the first stage of postconviction proceedings, "a petition alleging ineffective assistance may not be summarily dismissed if (i) it is arguable that counsel's performance fell below an objective standard of reasonableness and (ii) it is arguable that the defendant was prejudiced." (Emphases and internal quotation marks omitted.) *Tate*, 2012 IL 112214, ¶ 19.

¶ 31     Here, defendant alleges counsel on direct appeal was ineffective for not raising an ineffective assistance claim that his trial counsel failed to present testimony of an expert witness regarding the reliability of eyewitness identifications. However, where a defendant raises an ineffective assistance claim against appellate counsel, defendant cannot be said to have incurred

prejudice from counsel's failure to raise an issue if that issue lacks merit. See *People v. Edwards*, 195 Ill. 2d 142, 163-64 (2001). Accordingly, we first determine the merits of defendant's claim that trial counsel was ineffective.

¶ 32 Decisions regarding which witnesses to call at trial ultimately rest with trial counsel, and as matters of trial strategy, they are "generally immune from claims of ineffective assistance of counsel." *People v. Reid*, 179 Ill. 2d 297, 310 (1997). "Counsel's failure to call an expert witness is not *per se* ineffective assistance, even where doing so may have made the defendant's case stronger, because the State could always call its own witness to offer a contrasting opinion." *People v. Hamilton*, 361 Ill. App. 3d 836, 847 (2005).

¶ 33 In support of his argument that trial counsel should have called an expert witness, defendant relies heavily on *People v. Lerma*, 2016 IL 118496, in which our supreme court found the circuit court abused its discretion in denying the defendant's request to admit expert testimony regarding the reliability of eyewitness identifications. *Id.* ¶¶ 25-32. As this court has noted, the issue considered by the *Lerma* court—whether the trial court abused its discretion in rejecting proffered expert testimony—is "manifestly different" from the issue before us now, *i.e.*, whether defendant's counsel was ineffective for failing to present the testimony of an identification expert. *People v. Macklin*, 2019 IL App (1st) 161165, ¶ 39. Accordingly, we are not persuaded by defendant's reliance on *Lerma*.

¶ 34 Moreover, prior to *Lerma*, it was "common practice in Illinois" to exclude expert testimony on the reliability of eyewitness identification. *Lerma*, 2016 IL 118496, ¶ 24. Pre-*Lerma*, the "trend in Illinois [was] to preclude expert testimony on the reliability of eyewitness identification on the ground that it invades the province of the jury as trier of fact." *People v. McGhee*, 2012 IL App

(1st) 093404, ¶ 54. Given that defendant's trial occurred before *Lerma* was decided, there is no arguable basis for concluding that counsel's performance was deficient because counsel did not present expert testimony on the reliability of eyewitness identifications. See *Macklin*, 2019 IL App (1st) 161165, ¶ 38 ("Representation based on the law prevailing at the time of trial is adequate, and counsel is not incompetent for failing to correctly predict that the law will change.").

¶ 35    There likewise is no arguable basis for concluding that defendant was prejudiced by counsel's decision. Putting aside the fact that defendant's contentions regarding what an identification expert would have testified are purely speculative, defendant claimed that an identification expert would have challenged Love's ability to focus on the details of the incident and defendant's face given the encounter's "quick" duration. He claimed the expert would have raised that Love could not know what the offender looked like without cap and sunglasses, her age affected her eyesight and memory, and she could not have remembered his face by the time she viewed the lineup. However, beyond defendant's claim regarding how Love's age may have affected her sight and memory, defendant's petition did not identify any challenges to his identification that his trial counsel did not already raise.

¶ 36    Trial counsel extensively cross-examined Love, eliciting testimony that defendant wore a cap and sunglasses at the time of the incident, that Love had not known defendant prior to the trial, and that Love's encounter with defendant was "very brief." See *People v. Blue*, 205 Ill. 2d 1, 12 (2001) ("Cross-examination is the principal means by which the believability of a witness and the truth of his testimony are tested.") (Internal quotation marks omitted.)). Then, in closing, the crux of trial counsel's argument was to call into question Love's ability to accurately identify defendant, asserting *inter alia* that she would not have been able to remember the offender's identity by the

time she viewed the lineup. We find defendant failed to set forth an arguable claim that an identification expert would have contributed any more than trial counsel in challenging the reliability of Love's identification of defendant. See *Patterson*, 2014 IL 115102, ¶ 81 (defendant must show actual prejudice, not simply speculation).

¶ 37     Further, as we previously found on defendant's direct appeal, all of the factors outlined in *Neil v. Biggers*, 409 U.S. 188 (1972), for determining the reliability and sufficiency of a witness's identification weigh in favor of Love's identification being reliable and sufficient to establish defendant's identity as the offender. *People v. Burke*, 2018 IL App (1st) 160178-U, ¶¶ 24-29. Namely, (1) Love had the opportunity to view defendant at close range for a few minutes and was able to recall what defendant was wearing; (2) Love gave a significant degree of attention, as she was able to recall specifics regarding the time defendant entered and his actions within the store; (3) Love's description of defendant reflected no substantial inaccuracies; (4) Love demonstrated no uncertainty in identifying defendant during the lineup and at trial; and (5) only a little over two months passed between the time of the armed robbery and the lineup identification. In light of the strength of Love's identification of defendant as the offender, defendant cannot claim that he was arguably prejudiced by the lack of expert testimony regarding the reliability of eyewitness identifications. *Id.*

¶ 38     In sum, we find the circuit court properly summarily dismissed defendant's postconviction petition, as defendant failed to state an arguable claim that trial counsel was ineffective for failing to call an identification expert at trial. By extension, defendant also failed to set forth an arguable claim that his counsel on direct appeal was ineffective for not raising trial counsel's ineffectiveness on this issue, as such a challenge would have lacked merit. See *Edwards*, 195 Ill. 2d 142, 163-64.

¶ 39    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 40    Affirmed.